Thompson v. Jennings et al., Appellant.

Argued October 26, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Frank G. Butler,* for appellants.

*Paul M. Rosenwey,* and with him *William H. Peace,* for appellee.

OPINION BY BALDRIGE, J., December 16, 1933:

Two closely related cases are involved in this appeal. They were argued together and will be disposed of in one opinion.

The first case involves a judgment note executed by John Michael Jennings and Mary Jennings, his wife, to Isabella Thompson, dated October 29, 1921, in the sum of $140. This note was entered of record April 6, 1926, one month after the death of Mary Jennings, who died intestate. Rule to open the judgment to let the defendants into a defense was granted May 5, 1927, and on May 13, 1927, the rule was discharged in so far as John Michael Jennings was concerned. Having ascertained that Mary Jennings was dead, a suit in assumpsit was instituted by Isabella Thompson on December 30, 1926, against the administrators and heirs of Mary Jennings.

The second case is a sci. fa. under a mortgage, dated December 26, 1918, in the sum of $750, executed by John Michael Jennings and Mary Jennings, his wife, to Walter Thompson, on which there was an alleged balance due of $326.60. This mortgage was assigned July 8, 1919, to the Pennsylvania Security Building and Loan Association. Walter Thompson died January 31, 1921. The mortgage was reassigned on April 1, 1926, by the building and loan association to Isabella Thompson, executrix of the estate of Walter Thompson.

These cases, after considerable delay, were called for trial, and after certain evidence was adduced, by ,agreement of the parties, they were referred to a referee under the Act of June 16, 1836, P. L. 715, sec. 3 (5 PS §3), which provides that with the consent of the parties, all matters of fact in controversy in a suit may be referred to a referee who shall report to the court, and the facts so found shall have the same effect as a special verdict. A referee was duly appointed, and after a large amount of testimony was taken, he found for the plaintiff in both cases.

It appears from the record that the judgment note in question was first offered in evidence. The makers, who were illiterate, each signed the note by his and her mark, duly witnessed by George Thompson, John Jennings and Frank Schrandt. The latter is now deceased. There was no denial of the authenticity of the signatures. The defendants relied entirely upon the testimony of John J. Jennings who testified that George Thompson owed him $140 which had been left with him for the purpose of paying dues to a building and loan association in which the witness had five shares of stock, that he paid from time to time dues thereon to his mother, and she in turn paid them over to George Thompson who failed to pay the building and loan association, as a result of which there was due him the sum of $140; that Walter Thompson asked the witness' mother to lend $140 to Mrs. Thompson who in turn would lend it to their son, George, and he would then pay the witness. Mrs. Jennings agreed to make this loan in that manner and the parties met at Thompson's office on October 29, 1921, to consummate the arrangement. George Thompson gave the check of his mother, Isabella Thompson, for $140, payable to the witness, and he handed it over to his mother, who in turn gave it to George Thompson, who had originally produced it.

George Thompson expressly denied that there was any such roundabout transaction, and stated that what actually occurred was that Mrs. Jennings had previously requested him to obtain a loan of $180 for her. He, however, was unable to get that amount, but his mother agreed to lend her $140, and she, her husband and son came to the office for the purpose of getting the money which Mrs. Jennings desired to pay to her son for money she owed him. Thompson produced $140 in cash, instead of his mother's check as he stated she never had a bank account, and turned the money over to Mrs. Jennings; she thereupon signed the judgment note in question. He drew up a receipt in the sum of $140, setting forth that it was in full settlement of money paid to Mrs. Jennings by her son, and it was signed by John Jennings. John Jennings testified that he thought the note was a receipt, although at that time he was eighteen years of age and was able to read and write, and there is nothing to indicate that he did not have the ability to understand the entire transaction.

Confronted as we are with this written evidence and the direct testimony of George Thompson, there was just reason for the referee's concluding that the highly improbable and unconvincing story told by John J. Jennings should not prevail. There was objection raised to the competency of John J. Jennings, but that need not be discussed or determined in view of the referee's permitting him to testify. If any harm was done, it was to the appellee.

That brings us to the suit brought on the mortgage. Mrs. Jennings purchased a property for $1,000 and executed and delivered a mortgage to Walter Thompson on December 26, 1918. Thompson was engaged in the real estate business and he negotiated the loan, attended the settlement, arranged for the insurance and all other matters necessary to the closing of this

transaction. Thereafter, he collected the rents, paid the water rents, had a number of repairs made to the house, etc. Payments were made from time to time by Mrs. Jennings to Walter Thompson, and later to his son, George Thompson, on account of the expenditures, including the sum of $100 for Walter Thompson's services, the premium on fire insurance, fees for recording the mortgage and deed, etc. Counsel for defendants pleaded payment of the mortgage. Sixty-five receipts for various sums of money, totalling $1,238.50, were produced. The referee found that the aggregate amount due the plaintiff was $1,654.50, and that after allowing credit of $1,282.90 there remained a balance of $371.60. "From this balance should be deducted small payments made by Mary Jennings since the death of Walter Thompson, amounting to $45, leaving a net balance of $326.60, on which interest should be allowed of six per cent since December 26, 1920, and in accordance with the terms of the mortgage an attorney's commission of five per cent."

We have examined the sixty-five receipts offered in evidence. Many of them were simply "on account of indebtedness." The defendants were unable to assume successfully the burden of showing that the money paid was on account of the mortgage and not on account of the expense incurred by the Thompsons in connection with the purchasing and maintaining of Mrs. Jennings' property.

There is certainly nothing on this record which indicates a plain mistake upon the part of the referee in finding adversely to the defendants in each of these cases; and it is only when some obvious error appears that we would be justified in interfering with his conclusion: Klipstein v. Whitesides (No. 1), 30 Pa. Superior Ct. 35.

Judgments affirmed.